## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ROBERT NAMER                                          CIVIL ACTION

VERSUS                                                06-10698

CARLTON G. HALL, ET AL.                               SECTION "T"(4)

Before the Court is a Motion for Summary Judgment filed on behalf of Belfor USA Group, Inc. (Rec. Doc. 33).  The Court heard oral argument on November 14, 2008, and the matter was taken under submission.  The Court, having considered the record, the evidence submitted, the law and applicable jurisprudence, is fully advised in the premises and ready to rule.

## ORDER AND REASONS

### I.      BACKGROUND

This action arises out of an incident alleged to have occurred on October 16, 2005, involving the plaintiff, Robert Namer, and Carlton G. Hall, a security guard employed by Diplomatic. In addition to Mr. Hall and Diplomatic, the Complaint (as amended) alleges claims against Belfor, who contracted Diplomatic for security services, and ITT, Inc., one of Belfor's subcontractors.

In his Complaint, Mr. Namer alleges he witnessed Mr. Hall assaulting an individual in the street near the Hotel, stopped his vehicle, posed as a news reporter, and confronted Mr. Hall. Mr. Namer then alleges that Mr. Hall claimed he was a police officer, drew a weapon, and threatened to arrest him.  Mr. Namer asserts that "Hall sought charges against Namer for false personation of a police officer," and Mr. Namer was subsequently arrested for impersonating an officer and spent the night in jail.  Based on these allegations, Mr. Namer alleges a variety of

damages and asserts a number of unspecified torts on the part of Mr. Hall, for which he seeks to hold Belfor vicariously liable.

The instant motion, filed on behalf of Belfor, seeks summary judgment based on the fact that Plaintiff failed to make a showing sufficient to establish the existence of an element essential to his case.  Specifically, Belfor argues that (1) Diplomatic was an independent contractor and (2) Diplomatic's tortious conduct cannot be ascribed to Belfor.

## II.    LAW AND ANALYSIS

### A.    SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure mandates summary judgment against a party who fails, after adequate discovery and upon motion, to make a showing sufficient to establish the existence of an element essential to that party's case, and upon which that party will bear the burden of proof at trial. *Celotex Corp v. Catrett*, 477 U.S. 317 (1986). In such an instance, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of a non-movant's case necessarily renders all other material facts immaterial, and the movant is entitled to summary judgment as a matter of law. *Id.* Only factual disputes that might affect the outcome of the suit under the governing substantive law will be considered material for purposes of determining whether summary judgment is proper. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Burgos v. Southwestern Bell Tel. Co.,* 20 F.3d 633, 635 (5th Cir. 1994).

### B.    INDEPENDENT CONTRACTOR STATUS

Under Louisiana law, it is well-settled that a principal is not liable for the torts committed

2

by its independent contractor in the course of performing its contractual duties. *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 549 (5th Cir. 1987); *Mathis v. Lafayette Crewboat Services, Inc.*, No. 93-3899, 1995 WL 550950, *2 (E.D. La. Sept. 15, 1995).  The Louisiana Supreme Court set out guidelines for determining whether a party is an independent contractor or an employee in *Hickman v. Southern Pacific Transport Company*, 262 So. 2d 385 (1972):

> (1) the existence of a valid contract between the parties; (2) whether the work being done is of an independent nature such that the contractor may employ nonexclusive means in accomplishing it; (3) whether the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered; (4) whether there is a specific price for the overall undertaking agreed upon; and (5) whether the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.  *Hickman*, 262 So. 2d at 390-91.

Here, the record reflects that Belfor and Diplomatic had an ongoing contract detailing an independent contractor relationship.  The parties confected a written contract – the Master Services Agreement – whereby Diplomatic was to provide a specific service, for a set price, over a specified period of time, all as spelled out in individual work orders.  See Defendant's Motion for Summary Judgment, Exhibit "1" Master Services Agreement at ¶ 1.  The security services were to be provided by Diplomatic according to its own means and methods, including its own employees and supervision thereof, without being subject to the control or direction of Belfor, and these services were required to be covered by Diplomatic's own licenses and insurance. Defendant's Motion for Summary Judgment, Ex. "A," Holder Decl. at ¶¶ 4-6; *see also* Ex. "1," Tab "A," Master Services Agreement at ¶¶ 3-4, 8, 11 & 14.  Further, the Master Services

Agreement assigned Diplomatic with complete responsibility for performing its services with due regard for the safety of its employees and the public. *See* Ex. "1," Tab "A," Subcontractor Safety Affidavit at ¶¶ 1-3.  Therefore, Diplomatic was Belfor's independent contractor, and no facts have been presented or uncovered to refute this legal conclusion.

As noted above, it is settled that a principal is not liable for the torts committed by its independent contractor in the course of performing its contractual duties.  *Ainsworth*, 829 F.2d at 549; *Mathis*, 1995 WL 550950 at *2.  There are, however, two narrow exceptions to this general rule.  A principal may be liable for the acts of an independent contractor only if (1) the activity engaged in by the independent contractor is "ultrahazardous," or (2) if the principal maintains "operational control" over the activity in question.  *Coulter v. Texaco, Inc*. 117 F.3d 909, 912 (5th Cir. 1997).  As the first exception is inapplicable for obvious reasons, the court will focus on the second exception.

The Fifth Circuit finds that "operational control" exists only if, as a matter of contract, the principal has direct supervision over the "step-by-step process" of accomplishing the independent contractor's work. *LeJeune v. Shell Oil Co*., 950 F.2d 267, 269-70 (5th Cir. 1992).  In determining the existence of operational control, "the most important question is whether and to what extent the right to control the work has been contractually reserved by the principal."  *Coulter*, 117 F.3d at 912.  In this regard, courts examine the contract between the parties to determine the extent to which, if at all, the principal has contractually reserved the right to control the contractor's work.  *Id.*; *Ainsworth*, 829 F.2d at 550; *Newman v. KMJ Services, Inc*., No. 04-2518, 2006 WL 3469563 *2 (E.D. La. Nov. 30, 2006).  The plaintiff argues that Belfor had direct and indirect control and responsibility for activity on the leased premises.   As argued

4

by the defendant, whether or not the contract reserves the supervision and oversight to Belfor is an objective analysis. This Court finds that the terms and scope of the Master Services Agreement show that Belfor reserved no contractual right to control or direct Diplomatic's services.

First, and most importantly, the Agreement provides that Diplomatic would "furnish ***all labor***, materials, tools, *supervision* and equipment" under the contract. *See* Def.'s MSJ, Ex. "1," Tab "A," Master Services Agreement at ¶ 3 (emphasis added). Further, it was Diplomatic's responsibility to implement necessary safety-related precautions on the job site; indeed, Diplomatic warranted to Belfor that it was providing personnel "properly trained in safety methods" for its trade. *See Id.*, Ex. "1," Tab "A," Subcontractor Safety Affidavit at ¶ 1. Diplomatic also was contractually responsible for paying all personnel it employed, including Mr. Hall; for procuring liability insurance (and providing to Belfor proof thereof); and for paying all applicable taxes and maintaining necessary licenses and permits. *See Id.,* Ex. "1," Tab "A," Master Services Agreement at ¶¶ 4, 8, & 14. In fact, the Master Services Agreement made payment for Diplomatic's services under the contract expressly contingent on Diplomatic's satisfying these contractual requirements. *See Id.,* Ex. "1," Tab "A," Master Services Agreement at ¶ 11.

Further, the defendant argues, and the and facts show, that throughout the tenure of the Master Services Agreement, the parties' relationship remained consistent with the contract and at all times reflected that of a principal and independent contractor. Diplomatic hired Carlton Hall as a security guard for the Hotel and always possessed all supervisory responsibilities with respect to the employment of Hall as well as all security personnel. *See Id.*, Ex. 1, Holder Decl.

at ¶¶ 4-6; Ex. "1," Tab "A," Master Services Agreement at ¶ 3."  As Larry Holder attests, Belfor had no direct involvement *whatsoever* with the security Diplomatic and/or Mr. Hall provided at the Hotel. Belfor provided no training or supervision to Diplomatic's employees, nor did it otherwise provide instruction to Diplomatic on the manner in which security was to be provided. *See* Ex. "1," Holder Decl. at ¶¶ 5-6.  Thus, the Court finds that Belfor never authorized Diplomatic or its employees to engage in the tortious conduct that allegedly brought about plaintiff's injuries, a critical element under the operational control exception espoused by this Court and the Fifth Circuit.  *See Coulter*, 117 F.3d at 912 ("absent an express or implied order to the contractor to engage in an unsafe work practice leading to an injury, a principal . . . cannot be liable under the operational control exception").

In sum, the Fifth Circuit has consistently held that a principal who hires an independent contractor over which he exercises no operational control has no legal duty to prevent or remedy hazards created by its independent contractor.  *Coutler*, 117 F.3d at 913. This matter is a classic case for the application of the independent contractor doctrine, and the operational control exception is inapposite. *See Graham v. Amoco Oil Company,* 21 F.3d 643, 646 (5th Cir. 1994) (no operational control where principal did not participate in any decision making or give any safety advice to contractor); *Landry*, 889 F.2d 1469, 1472 (5th Cir. 1989) (no operational control where principal never instructed contractor how to do the job); *Jones v. H.W.C. Ltd*., 2003 WL 42147 at *2 (no operational control where there was no evidence that principal expressly or impliedly ordered independent contractor to engage in any unsafe work practices). Given the undisputed facts about the role of Belfor and Diplomatic, Belfor cannot be liable for the torts of Diplomatic's employee.

For the foregoing reasons, this Court finds that Belfor is not liable for the torts of Diplomatic or any of its employees, including Carlton Hall.

Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment, filed on behalf of Belfor USA Group, Inc. (Rec. Doc. 33) is hereby **GRANTED.**

New Orleans, Louisiana, this 24th day of March, 2008.

**G. THOMAS PORTEOUS, JR.**
**UNITED STATES DISTRICT JUDGE**